IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| JSLG, INCORPORATED, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. W-11-CA-131 |
| | § | |
| CITY OF WACO and RANDY | § | |
| CHILDERS, Building Official, | § | |
|     Defendants. | § | |

**O R D E R**

This removal action involves a Constitutional challenge to a City of Waco ordinance governing sexually oriented businesses. The City revoked Plaintiff's license as a result of violations of the ordinance. While Plaintiff was awarded a temporary restraining order ("TRO") in state court, a continuance of that TRO was denied by this Court after a hearing. The matter was then set for a preliminary injunction hearing, at which additional testimony was provided. Subsequent to that hearing, Defendants filed a Motion for Summary Judgment. Having reviewed the motion, Plaintiff's response, the summary judgment proof presented, as well as the evidence presented at the preliminary injunction hearing, the Court is persuaded that Defendants' motion should be granted and Plaintiff's request for a preliminary and permanent injunction should be denied.

# I. SUMMARY JUDGMENT

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(a). The moving party must identify "each claim or defense–or the part of each claim or defense–on which summary judgment is sought." *Id*. The moving party is entitled to summary judgment if it shows that a fact cannot be disputed or is genuinely disputed. Fed.R.Civ.Pro. 56(b). The movant supports its summary judgment position by either: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only, admissions, interrogatory answers, or other materials;" or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.Pro. 56(c)(A), (B). A disputed material fact is genuine if the evidence is such that a jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).[1] The initial burden to demonstrate the absence of a genuine issue concerning any material fact is on the moving party. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). This burden can be satisfied by pointing out to the district court that there is an absence of evidence to

---

[1] Although Fed.R.Civ.Pro. 56 was amended effective December 1, 2010, no substantive change to the standard was made. *See Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 n. 8 (5th Cir. 2011).

support an essential element of the non-moving party's case. *Id*. Upon such a showing, the burden shifts to the non-moving party to establish that there is a genuine issue. *Id*. at 324. The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. V. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Additionally, "[a]ll reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions." *VRV Development L.P. v. Mid-Continent Gas. Co*., 630 F.3d 451, 455 (5th Cir. 2011), *citing Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (Non-movant cannot preclude summary judgment by raising "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence").

## II.  BACKGROUND FACTS

Plaintiff owns and operates a nightclub known as Sonny's B.Y.O.B. ("Sonny's" or "the Club") which offers nude dancing. Mary Skruck ("Ms. Skruck") owns 100% of the stock in JSLG. Ms. Skruck lives in West Virginia and is described by her father, John "Bucky" Skruck ("Mr. Skruck"), as "a 22-year-old, single parent of two children," who "is going to nursing school and maintains a job." Appendix "P-2" to Plaintiff's Response to Defendants' Motion for Summary Judgment. Ms. Skruck has no involvement in the day-to-day operation of the Club, and she has had no involvement nor shown any interest in the City's revocation of the Club's license. Mr. Skruck runs the Club and all employees answer to him. He refers to himself as the

owner of the Club and makes all management decisions without input from his daughter.

The Club does not sell alcohol, although alcoholic drinks are provided free of charge to the patrons. Testimony of Jeremiah Phillips at preliminary injunction hearing, p. 20. Soft drinks, ice and other "set-ups" are available for a fee. The primary source of entertainment and revenue at the Club is the nude dancing. Patrons can observe the dancers on a public stage or pay extra for a private dance. A variety of rooms are set aside for private dances. The room that plays the largest role in this case is referred to by Plaintiff as the non-smoking lounge, while Defendants refer to it as the "high roller" room.[2] The door to the lounge has a lock which can be engaged to keep others out. Although other areas of the club are under camera surveillance, there are no cameras in the high-roller lounge. There is a window in the main area of the lounge which permits visibility from the outside. The more private area is not visible through this window. The "amenities" in the private room include a stained chair and baby wipes.

The high-roller room with its private room was constructed after repairs were done to the Club after a fire in 2006. A plan showing the layout of the building was submitted reflecting the changes made after the fire. However, other changes to the

---

[2]    As the photographs show an ashtray in the room, "high-roller" appears more appropriate than "non-smoking."

4

layout of the Club were made, which were not reflected in the license renewal application submitted in 2011.

The high-roller room can be rented for $100 per half hour. The dancers charge whatever they want for their services. They are encouraged to sell dances in the private room. One of the dancers, Octavia Sims, reported that they were required by Skruck to sale the high-priced private dances in the high-roller rooms.

Five dancers were arrested for prostitution on the Club premises, and two were subsequently convicted.[3] After each arrest, the City of Waco sent notice of the violations to JSLG at its corporate address and to the Club addressed to the Manager. The events giving rise to the convictions occurred in the secluded room in the high-roller lounge. At least one of the arrests occurred after a dancer made an arrangement with an undercover police officer for sexual acts which were to take place in the high-roller room. Both convicted dancers, a manager and an assistant manager were fired as a result of those convictions. In at least one of the arrests, Mr. Skruck provided bail and legal fees for the dancer.

Dancer Octavia Sims ("Sims") and former manager Timothy Garrett ("Garrett") provided information to the City that the high-roller room was designed specifically for the purpose of facilitating sexual activities. Garrett advised that he personally

---

[3] Dancers Keosha Robinson and Brandy Hale were convicted of prostitution. Dancers Angela Burns and Octavia Sims and customer Kevin Hancock were arrested for prostitution although not convicted.

witnessed sexual activities occurring on the premises as he regulated the use of the high-roller room.

During the course of the arrest and investigation of Keosha Robinson, the police, code enforcement, and the Fire Marshall conducted an inspection of the premises and attempted to gain entry into the high-roller room. The door to the room was locked, and the Fire Marshal requested the key from the manager on duty, Abraham Aguilar ("Aguilar"). Aguilar gave the Fire Marshall a key, but then informed him it was the wrong key. Aguilar went to retrieve the correct key, and attempted to open the door with a variety of keys, very noisily. When none appeared to work, Aguilar left again to get more keys. While waiting for Aguilar to return, the door to the high-roller room opened from the inside, and a dancer and male patron exited the room. Aguilar was told that the lock to the room needed to be removed and that a camera needed to be placed in the room.

On a subsequent inspection, the Fire Marshalls discovered the high-roller room was once again locked. Aguilar was asked for the keys, and first said he did not have keys to the door. When reminded of what occurred during the previous inspection, Aguilar gave the Fire Marshall the key to the room. The Fire Marshalls entered and found dancer Angela Burns completely nude with patron Kevin Hancock, who was sitting in a chair wearing no pants. It was clear from the scene that a sexual act had occurred. In addition to the lock not being removed, no camera had been installed in the room. Aguilar was again told to remove the lock from the

door.  Police additionally advised Mr. Skruck that a camera should be installed in the private room.

The convictions led the City to revoke the Club's sexually oriented business license after providing notice of its intent to do so.  As further support for the revocations, the City asserted that the Club was in violation of City ordinances because the owner had not provided accurate information regarding the Club's physical configuration during the renewal process, and the true owner of the Club did not sign the appropriate documents.

An appeal to the Waco City Council was unavailing.  Plaintiff next brought suit in state district court, and the case was removed to this court.

The sections of the Ordinance which the City claims were violated are §§ 20-40(b)(1), (3), (6), and (7), which provide, in pertinent part,:

Sec. 20-40. - Revocation of license.
. . .

(b)    The building official shall revoke a license if he determines that:

(1)    A licensee gave false or misleading information in the material submitted during the application or license renewal process;
. . .

(3)    A licensee or an employee has knowingly allowed prostitution on the premises;


. . .

7

(6)    On two or more occasions within a 12-month period, a person or persons committed an offense, occurring in or on the licensed premises, of a crime listed in section 20-36(a)(8)a[4], for which a conviction has been obtained; and the person or persons were employees of the sexually oriented business at the time the offenses were committed;

(7)    A licensee or an employee has knowingly allowed any act of sexual intercourse, sodomy, oral copulation, masturbation or sexual contact to occur in or on the licensed premises. . . .

When a license is revoked, "the revocation shall continue for one year; and the licensee shall not be issued a sexually oriented business license for one year from the date the revocation became effective. If, subsequent to the revocation, the building official finds that the basis for the revocation has been corrected or abated, the applicant may be granted a license if at least 90 days have elapsed since the revocation became effective." Sec. 20-40(e).

Section 20-40(b)(1), the giving of false information, applies to both the application and the license renewal process. Section 20-37 governs license renewals and provides, in pertinent part,:

(a)    Each license issued pursuant to this article shall expire on December 31 of each year. A license may be renewed by

---

[4] These offenses include the following: prostitution; promotion of prostitution; aggravated promotion of prostitution; compelling prostitution; obscenity; sale, distribution or display of harmful material to a minor; sexual performance by a child; possession of child pornography; public lewdness; indecent exposure; indecency with a child; sexual assault or aggravated sexual assault; incest; solicitation of a child or harboring a runaway child; or criminal attempt, conspiracy, or solicitation to commit any of the foregoing.

submission to the building official of an application on the form prescribed by such official. . .  The renewal application must be signed by the persons set out in section 20-34(c).  The renewal application shall be reviewed in accordance with the same standards and requirements for an original license. . . .

. . .

The requirements for initial application for a license are set out in Sec. 20-34:

(a)     An application for a license required by this article must be made to the building official on the form prescribed by that official.  The application must be accompanied by a sketch or diagram showing the configuration of the premises, including a statement of the total floor space occupied by the total business and the total floor space occupied by the sexually oriented business portion of the business.  The sketch need not be professionally prepared, but it must show the interior dimensions of the business to an accuracy of plus or minus six inches.

(b)     The applicant must be qualified according to the provisions of this chapter.  The premises must be inspected and found to be in compliance with the law by the health department, fire department and department of inspection services.

(c)     If a person who wishes to operate a sexually oriented business is an individual, he must sign the application for a license as the applicant.  If the person who wishes to operate a sexually oriented business is other than an individual, each individual who has a 20 per cent or greater interest in the business must sign the application for a license as the applicant.  Each applicant must be qualified under section 20-36, and each applicant shall be considered a licensee if a license is granted.

Sec. 20-141 outlines a licensee's appeal rights and provides:

(a)     If a license is denied, suspended or revoked, the applicant shall be informed of that action in writing in a notice that also states the basis for the action.  The aggrieved party may appeal that action to the city council by filing a notice of appeal with the city secretary's office within ten days of receiving the notice of the decision to deny, suspend or revoke the license.  In the notice of approval, the appealing part shall clearly set out is reasons for believing that the action to deny, suspend or revoke the license was in error.

(b)     After an appeal is filed, the city council shall conduct a public hearing on the appeal within 30 days.  Within 30 days of closing the public hearing, the council shall make its decision on the appeal.  A written notice setting out he council's decision shall be given to the appealing party.  If the council fails to act within the timeframe stated herein, the denial, suspension or revocation of the license shall be overturned.

Appendix D-1 to Defendants' Joint Motion to Dismiss.

## II. DISCUSSION

Plaintiff seeks a declaration that Sections 20-40(b)(1), (3), (6) and (7) are unconstitutional.  Plaintiff first asserts that using past acts of employees to terminate the Club's license constitutes a prior restraint on protected First Amendment expressive conduct.  Plaintiff next asserts that Sections (3), (6), and (7) permit a license to be revoked without a showing of culpability on the part of the license holder, resulting in "strict liability" on the license holder as a result of its employees' acts.  Plaintiff also asserts that the City was incorrect in its determination that the rightful owner had not signed the renewal application and that there were changes to the premises which should have been reported.  Finally, Plaintiff asserts that the

dancers who work at the Club are independent contractors, and that their actions should not be attributed to the Club.  As a result, Plaintiff seeks a declaration that Sections (3), (6) and (7) are an unconstitutional prior restraint; that Sections (3), (6) and (7) are facially unconstitutional in that they do not require culpability on the part of the license holder; that Section (1) is unconstitutionally vague in that it does not define "when and whether information that is deemed 'false or misleading' is also material to the application process; that Section (1) gives an excessively broad degree of discretion to the Building Official to "distinguish between a material and immaterial representation without showing that the information was given to the licensing agency with the intent to deceive;" that the evidence cited by the city does not support the revocation of the sexually oriented business license;  that Sections (1), (3), (6) and (7) are unconstitutionally vague and over broad; and that the dancers who were arrested for prostitution were independent contractors and not employees of the Club.

A.  Prior Restraint.  The short answer to Plaintiff's allegation in this regard is that the ordinances at issue punish past behavior rather than prohibiting future acts and, thus, does not constitute a prior restraint on any type of expressive behavior protected by the First Amendment.  In determining whether a regulation governing a sexually oriented businesses is an unconstitutional prior restraint, the reviewing court must determine:  (1) whether the regulation is within the constitutional power of the government to enact; (2) whether the regulation furthers an important or

substantial government interest; (3) whether the government interest is unrelated to the suppression of free expression; and (4) whether the restriction is no greater than is essential to the furtherance of the government interest. *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S.Ct. 1673, 1678-1679, 20 L.Ed.2d 672 (1968). See also *N.W. Enterprises, Inc. v. City of Houston*, 352 F.3d 162, 173 (5th Cir. 2003), amended on rehearing, 372 F.3d 333 (5th Cir. 2004) ("(a) whether the regulation is a time, place and manner regulation; (b) whether the regulation is aimed at the content of sexually-oriented speech (content-based) or the secondary effects of the speech on the community (content-neutral); and (c) whether the regulation is "designed to serve a substantial governmental interest and leaves open reasonable alternative avenues of communication"). The First Amendment does not prohibit all regulation of expressive speech. When "speech" and "nonspeech" elements

> are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong.

*O'Brien*, 391 U.S. at 376-77 (footnotes omitted).

Whichever descriptive term is used, it is clear that the City's interest in the prevention of prostitution and other sexually oriented crimes from occurring on the premises of a sexually oriented business outweigh whatever slight First Amendment

right Plaintiff possesses to display nude dancers. "[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate. . . ." *City of Erie* v. Pap's A.M., 529 U.S. 277, 294, 122 S.Ct. 1382 (2000) *quoting Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

Under the *O'Brien* factors, there is no question but that the ordinances were within the power of the City of Waco to enact. The ordinances also further a substantial governmental interest -- the suppression of prostitution and other sexual crimes -- which is unrelated to the suppression of any type of protected expression. The numerous detrimental secondary effects from nude dancing are clearly delineated in cases from the Supreme Court and each of the federal circuit courts, upon which municipalities are permitted to rely in passing ordinances to ameliorate such effects. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 1736, 152 L.Ed.2d 670 (2002). A municipality does not have to conduct new studies or produce evidence which is independent of that already generated by other cities. *Id*.

Ordinances such as the one passed by the City of Waco, are not designed to prohibit First Amendment activity, but to penalize those who do not diligently prevent those secondary effects which are most prevalent in sexually oriented businesses.

Nude dancing, while somewhat protected expressive conduct, lies at the "outer perimeter of the First Amendment's protection. . . ." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991). Not just prostitution, but the prohibition of mere touching between a nude dancer and a customer has withstood Constitutional challenge. "[I]ntentional contact between a nude dancer and a . . . patron is conduct beyond the expressive scope of the dancing itself. The conduct at that point has overwhelmed any expressive strains it may contain. That the physical contact occurs while in the course of protected activity does not bring it within the scope of the First Amendment. . . ." *Baby Dolls Topless Saloons, Inc. v. City of Dallas, Tex.*, 295 F.3d 471, 484 (5th Cir. 2002), *quoting Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1253 (5th Cir. 1995).

The restrictions imposed by the ordinance are also no greater than necessary to further the substantial governmental interest. If a sexually oriented business is found to have violated the City's ordinance, the punishment does not preclude operation of the Club – it merely requires the dancers to don pasties and g-strings for a period of one year. Ordinances which require such costumes, and even those which completely prohibit nude dancing, have been held not to violate the First Amendment if they are content neutral. *Barnes*, 501 U.S. 560. *See also Pap's A.M.*, 529 U.S. 277. As the *Barnes* Court noted, "[O]n its face, the governmental interest in combating prostitution and other criminal activity is not at all inherently related to expression." *Barnes*, 501 U.S. at 585, 111 S.Ct. 2456. "[T]he ordinance does not

attempt to regulate the primary effects of the expression, i.e., the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impacts on public health, safety, and welfare, which we have previously recognized are 'caused by the presence of even one such' establishment." *City of Erie*, at 291, *quoting Benton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

While the penalty imposed by the City of Waco's ordinance "has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped, the dancers . . . are free to perform wearing pasties and G-strings. Any effect on the overall expression is *de minimis*." *City of Erie*, at 294. Whatever "message" is conveyed by a nude dancer is equally clear from one encased in pasties and a g-string. There is, therefore, no prior restraint.

B. Facial Challenge. Plaintiff argues that Sections 20-40(b) (3), (6) and (7) are facially unconstitutional because they do not contain a requirement of culpability on the part of the licensee and because determining the materiality of a misstatement or falsehood in a license application or renewal is left to the discretion of the deciding official.[5] A review of the ordinances reveals that both (b)(3) and (b)(7) require that the licensee or an employee "knowingly" allowed the prohibited sexual conduct to occur on the licensee premises. Even if the term "employee" is

---

[5] The ordinance in its entirety passes Constitutional muster under *City of Littleton, Colorado v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) by imposing administrative and judicial review and time limits.

removed from those sections, they would still pass constitutional muster as there is a requirement of knowledge on the part of the licensee.  There is, therefore, no basis for a facial challenge to those sections.  Section (b)(6), however, requires that an employee of the business be convicted on two occasions of specified offenses which occurred on the premises within a 12-month period, excluding the "knowingly" language of the other sections.

While a party may challenge the constitutionality of a statute as it applies to him, he may also challenge a statute in whole or in part  through what is termed a "facial" challenge.  A facial challenge considers only the text of a statute and not how it applies to a specific individual.  In order to prevail in a typical facial challenge,[6] a plaintiff must establish "that no set of circumstances exists under which [the challenged law] would be valid," *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), or that the challenged law does not have any 'plainly legitimate sweep,' *Washington v. Gluckberg*, 521 U.S. 702, 740, n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (STEVENS, J., concurring in judgment) (internal quotation marks omitted)."  *Stevens*,  130 S.Ct. at 1587.  *See also Wash. State*

---

[6]    Generally, the courts will not consider a facial challenge to a statute if there has been no contention that the statute is unconstitutional as applied in a specific case.  However, such a limitation does not necessarily apply in the First Amendment context.  *United States v. Stevens*, ___ U.S. ___, 130 S.Ct. 1577, 1587 n. 3 (2010).  *See also Gooding v. Wilson*, 405 U.S. 518, 520-21, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (quoting *Dumbrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)) ("[W]hen statutes regulate or proscribe speech . . . the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity'").  Nevertheless, JSLG makes both facial and as applied claims in this case.

*Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)*; San Antonio International Women's Day March Planning Committee v. City of San Antonio*, 619 F.3d 346, 356 (5th Cir. 2010).[7]  The Fifth Circuit has held that, in the First Amendment context, "the challenger need only show that a statute or regulation 'might operate unconstitutionally under some conceivable set of circumstances.'"  *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006), *cert. denied*, 549 U.S. 1112, 127 S.Ct. 938, 166 L.Ed.2d 704 (2007), *quoting United States v. Salerno*, 481 U.S. at 745.

The plaintiff raising a facial constitutional challenge bears "a heavy burden." *Rust v. Sullivan*, 500 U.S. 173, 183, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991). The plaintiff must "demonstrate a substantial risk that application of the provision will lead to the suppression of speech."  *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 2175, 141 L.Ed.2d 500 (1998).  This is because the First Amendment cannot be used "as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct."  *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705, 106 S.Ct. 3172 (1986).

---

[7]    There is some dispute as to which test applies when a plaintiff argues that a statute is facially unconstitutional because it is overbroad.  See Judge Dennis's dissent in *Sonnier v. Crain*, ___ F.3d ___, 2011 WL 503789, No. 09-30186 (5th Cir. Feb. 10, 20110).  The results in this case are the same under either analysis, so the Court will use the more lenient test – that the challenged law has no plainly legitimate sweep.

Nonobscene dancing is protected by the First Amendment, but the government can regulate such activity. *Fantasy Ranch, Inc. v. City of Arlington, Texas*, 459 F.3d 546, 554 (5th Cir. 2006). If the government's purpose in enacting a regulation is related to the suppression of content, the regulation of symbolic speech is subject to strict scrutiny. *Id*. "If, however, the government's predominate purpose is unrelated to the suppression of expression, such that the regulation can be 'justified without reference to the content of the regulated speech,' then intermediate scrutiny applies." *Id., quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). The intermediate scrutiny of government regulation of sexually oriented businesses is routinely applied by the courts. *Id*., at 555.

Facial challenges to statutes fall into two categories: (1) those that are vague, and (2) those that are overbroad. The courts sometimes treat these interchangeably.

A vague statute runs afoul of the constitution because it is insufficient to provide notice of what behavior is proscribed, resulting in a chilling effect on constitutionally protected activity. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The vagueness doctrine is "an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845 170 L.Ed.2d 650 (2008). A statute falls afoul of the due process clause when it fails

to provide "fair notice and fair enforcement," *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008), in that it: (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement," *Id., citing Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); (2) vests public officials with unlimited discretion, *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); or (3) otherwise "operates to inhibit the exercise of [basic First Amendment] freedoms," *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). *See also Women's Medical Ctr. of N.W. Houston v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001). What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.

The degree of vagueness that may be tolerated under the Constitution "depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Regulation of commercial activity is subject to a less strict test than a regulation which "threatens to inhibit the exercise of constitutionally protected rights." *Id*. at 499, 102 S.Ct. 1186. Additionally, civil regulations are subject to a less stringent test than criminal penalties "because the consequences of imprecision are qualitatively less severe." *Id*. "[A] scienter requirement may mitigate a law's

vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*.

What the court must decide in a facial vagueness challenge is whether the challenged statute has a plainly legitimate sweep. *Grange*, 552 U.S. at 449. In determining that, the court analyzes whether the statute places a severe burden on First Amendment rights, focusing on the factors which establish legitimacy; in this case, the *O'Brien* elements. As previously noted under the prior restraint argument, the ordinances at issue in this case clearly pass muster under *O'Brien*. There is clear notice as to what activity is prohibited, and little discretion left in the hands of any deciding official. Additionally, the penalties imposed place only a small burden on First Amendment expressive conduct – as previously noted, a violation does not prevent an establishment from operating, but merely requires that the dancers don a minimal covering during the penalty period. The ordinances provide clear notice as to what conduct is prohibited, and there is no discretion left to the deciding official to determine whether such conduct has occurred.

The ordinance requiring that the Club provide information to the City regarding the interior lay-out of the Club is also not vague. The clear sweep of that ordinance is to regulate health and safety codes and various zoning requirements. Yet again, this ordinance does not but an unfair burden on First Amendment activity because the provisions apply to all businesses. There is only an incidental and are not merely a tool to regulate sexually oriented businesses, although there are reasons

for which extra regulations could be applied to such businesses – namely, to prevent the type of activities which occurred at Plaintiff's establishment. Changes not reported to the City could very well endanger the lives of the Club's patrons as well as its employees in the case of fire or other catastrophe. The ordinance provides clear notice of what is required, and the deciding official is not vested with unbridled discretion in determining whether a violation has occurred, as the ordinance allows a certain variance in the description of the interior lay-out. Ordinances such as those at issue in this case have been held to pass constitutional muster. *See FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298, 1306 (5th Cir. 1988), *affirmed in part, vacated in part ( on other grounds)*, 493 U.S. 215 (199).

A second type of facial challenge exists in the First Amendment context "whereby a law may be invalidated as overbroad."[8] *Stevens*, 130 S.Ct. at 1587. As with statutes which are vague, an overbroad statute results in a chilling effect upon constitutionally protected activity. A statute is considered overbroad if "it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. This overbreadth doctrine "seeks to strike a balance between competing social costs." *Id*.

> On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the

---

[8] As Plaintiff asserts an "as applied" challenge, recent Fifth Circuit authority would preclude an overbreadth claim. *See Sonnier v. Crain*, 613 F.3d 436, 443 n. 6 (5th Cir. 2010) ("a challenger may only bring either an as-applied challenge or an overbreadth challenge, but he may not bring both"). However, out of an abundance of caution, the Court will also address the overbreadth claim.

> free exchange of ideas. On the other hand, invalidating a law that in
> some of its applications is perfectly constitutional – particularly a law
> directed at conduct so antisocial that it has been made criminal – has
> obvious harmful effects.

*Williams*, at 292. In order to achieve the proper balance, the courts "vigorously

enforce[ ] the requirement that a statute's overbreadth be substantial, not only in an

absolute sense, but also relative to the statute's plainly legitimate sweep." *Id*.

(emphasis in original). See also *Stevens*, 130 S.Ct. at 1587.

Adjudication of a facial overbreadth claim is an exception to traditional rules

of practice and should be employed "sparingly, and only as a last resort." *Baby*

*Dolls,*, 295 F.3d at 482, *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct.

2908, 37 L.Ed.2d 830 (1973). "[A] statute is overbroad if it validly regulates some

expressive conduct but also reaches substantial protected speech." *National*

*Federation of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011).

In the overbreadth context, the court must determine whether, even if a law has a

plainly legitimate sweep, it has a substantial number of applications that are

unconstitutional. *Stevens*, 130 S.Ct. at 1587; *Grange*, 552 U.S. at 449. This entails

determining whether impermissible applications outweigh permissible ones.

*Stevens*, 130 S.Ct. at 1592.

"The first step in overbreadth analysis is to construe the challenged statute;

it is impossible to determine whether a statute reaches too far without first knowing

what the statute covers." *Williams*, 553 U.S. at 293. The ordinances at issue in this

case apply to sexually oriented businesses, but they do not impose restrictions on the free expression of First Amendment expressive conduct. They merely work to eliminate sexual offenses which may occur on the premises and to ensure that the facilities are safe for its patrons.

The Courts "have not traditionally subjected every criminal and civil sanction imposed through legal process to 'least restrictive means' scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction." *Arcara*, 478 U.S. at 707. Such restrictions have been subjected to scrutiny "only where it was conduct with a significant expressive element that drew the legal remedy in the first place, . . . or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity, . . . ." *Arcara*, 478 U.S. at 707. In the present case, as in *Arcara*, the "nonspeech" conduct (illegal sexual behavior) which is "subject to a general regulation bears absolutely no connection to any expressive activity." *Id*. at 707 n.3. To paraphrase *Arcara*, nude dancing in an establishment used for prostitution "does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises." *Id*. As a result, the ordinances are not overbroad.

C. As Applied. Plaintiff argues that the ordinances are unconstitutional as they apply to the Club. As previously noted, the ordinances are not unconstitutional and they have been applied to the Plaintiff in a constitutional manner. Plaintiff argues

that "notice" was not properly given under ordinance (c)(6) because it relied upon notice given to the dancers rather than the Corporation. While there is a legal distinction in corporate law between "employees" and "independent contractors," the vital and integral place filled by the dancers in this case provide notice to the corporation for any acts they commit which violate the ordinances. Without the dancers, the Club would lose that which makes it distinctive and unique – a place to observe nude dancing. Giving the term "employee" the definition proposed by Plaintiff would be contrary to the purpose of the Ordinance – to prohibit activities such as prostitution and sexual contact on the premises by any person actively involved in the licensee's operations.

Other cases have found sufficient control over such dancers to term them employees rather than independent contractors. *I Gotcha, Inc. v. Texas Alcoholic Beverage Commission*, 2008 WL 2930614 (Tex. App. – Fort Worth, 2008) (unpublished) (where a dancer propositioned two undercover agents, court found there was sufficient control over her dancing activities to make her an employee for purposes of the administrative action); *Bruce v. State*, 743 S.W.2d 313 (Tex. App. – Houston [14th Dist.] 1987, writ ref'd) (dancer found to be employee when club retained control of when she was called to the stage and she had to have club's permission to perform); *Vela v. State*, 776 S.W.2d 721 (Tex. App. – Corpus Christi 1989, no pet.) (dancer determined to be employee when she entered club through dressing room and performed on stage).

From the testimony at the preliminary injunction hearing and in the record, it is clear that the management directed the dancers to rent the high-roller rooms as often as possible using whatever enticements were required. The dancers were not allowed to hold the money they earned, but were paid at the end of their shifts from the funds held by the manager or bartender. The managers and the dancers knew what occurred in the high-roller room and worked out ways to warn those inside if necessary. Additionally, even if the term "employee" were stricken from the statute, the Corporation would still be liable because the managers were aware of the illicit sexual activity, and assisted in its occurrence and in covering it up. Further, the Plaintiff is held liable only for acts which occur on the Club premises and committed by its employees. The Club is not liable for acts committed by the employees off the premises, or for acts which may be committed on the premises by the customers.

Finally, Plaintiff argues that it was unconstitutional for the City to base its licence revocation upon the fact that the signature on the renewal application was that of Mary Skruck. However, as previously noted, the evidence relied upon by the City was sufficient to establish that Bucky Skruck was the true owner of the Club and should have signed the renewal application. The ordinances are, therefore, not unconstitutional as applied in this case. Accordingly, it is

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction is **DENIED**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, and Defendants' Motion to Dismiss is **DENIED** as moot. It is further

**ORDERED** that any motions not previously ruled upon by the Court are **DENIED**.

**SIGNED** on this 26th day of September, 2011.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE